**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MATTHEW JONES, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE** |
| FAZE HOLDINGS INC., ANGELA DALTON, | ) **FEDERAL SECURITIES LAWS** |
| MICKIE ROSEN, NICK LEWIN, PAUL | ) |
| HAMILTON, ROSS LEVINSOHN, ANDRE | ) **JURY TRIAL DEMANDED** |
| FERNANDEZ, and BRUCE GORDON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Matthew Jones ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against FaZe Holdings Inc. ("FaZe" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company and GameSquare Holdings, Inc. ("GameSquare").[1]

2.      On October 19, 2023, FaZe entered into an Agreement and Plan of Merger (the "Merger Agreement") with GameSquare, and GameSquare's wholly-owned subsidiary

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

GameSquare Merger Sub, Inc. ("Merger Sub").  The Merger Agreement provides that GameSquare will acquire FaZe, with each share of FaZe common stock being converted into the right to receive 0.13091 shares of GameSquare common stock.[2]

3.      The Company's corporate directors subsequently authorized the January 26, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the claims asserted herein for violations of

---

[2] FaZe stockholders will own approximately forty-five percent of the combined company upon consummation of the Proposed Transaction.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for February 16, 2024.

Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and is and has been at all times relevant hereto, the owner of FaZe common stock.

2.      Defendant FaZe is a Delaware corporation with its principal executive offices located at 720 N. Cahuenga Blvd., Los Angeles, California 90038.  FaZe's shares trade on the Nasdaq Capital Market under the ticker symbol "FAZE."  FaZe operates as a lifestyle and media platform in gaming and youth culture.  The Company produces content, designs merchandise and consumer products, and creates advertising and sponsorship programs for brands reaching approximately 528 million people across social platforms.  The FaZe platform provides brands and advertisers with the ability to reach and engage with a young and engaged audience base. FaZe also designs and sells merchandise, apparel and consumer products under the FaZe brand.

10.      Defendant Angela Dalton is and has been a director of the Company at all times relevant hereto.

11.      Defendant Mickie Rosen is and has been a director of the Company at all times

relevant hereto.

12.     Defendant Nick Lewin is and has been a director of the Company at all times relevant hereto.

13.     Defendant Paul Hamilton is and has been a director of the Company at all times relevant hereto.

14.     Defendant Ross Levinsohn is and has been a director of the Company at all times relevant hereto.

15.     Defendant Andre Fernandez is and has been a director of the Company at all times relevant hereto.

16.     Defendant Bruce Gordon is and has been a director of the Company at all times relevant hereto.

17.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

18.     On October 20, 2023, GameSquare and the Company jointly announced in relevant part:

> **FRISCO, TX and LOS ANGELES, CA / ACCESSWIRE / October 20, 2023 / GameSquare** Holdings, Inc. ("GameSquare") \ NASDAQ:GAME) (TSXV:GAME) and FaZe Holdings Inc. (NASDAQ:FAZE) ("FaZe Clan") announce that the two companies have entered into a definitive agreement pursuant to which GameSquare will acquire FaZe Clan in an arm's length all-stock transaction.
>
> The acquisition brings together two complementary businesses to create one of the world's leading content, media and entertainment companies focused on gaming, esports, and youth culture.  The combined company will be powered by a progressive end-to-end platform of leading media and agency organizations,

gaming and esport teams, creative services, and technology capabilities. Combined, FaZe Clan and GameSquare generated annual revenue of approximately $138 million and achieved a 26.3% gross margin in 2022. Management expects to realize over $18 million in run-rate cost savings from the FaZe Clan acquisition, supported by reduced duplicate corporate costs and other cost savings.  The combined company plans to give guidance once the transaction is closed.

"The gaming community represents one of the largest and most engaged segments of the attention economy," stated Justin Kenna, CEO of GameSquare. "The acquisition of one of the biggest names in gaming serves as a perfect illustration of how we have built a powerful infrastructure with expansive scale that we can use to leverage the full spectrum of resources within the GameSquare ecosystem.  We are also thrilled to welcome back the founders of FaZe Clan and their fans, one of the most deeply engaged communities born on the internet."

"I'm confident that with Tommy, Apex and me back in charge of the brand, FaZe Clan will get back to where it was in its peak years," stated Richard "FaZe Banks" Bengtson, who will take on the CEO role of FaZe Clan after the transaction closes.  "We grew up on the internet and understand this brand better than anyone ever could.  We are grateful to have found a partner in GameSquare who sees that value in us and can help execute our vision.  We're going to produce first, talk later."

"Joining forces with GameSquare creates greater scale and exciting opportunities in the emerging market for gaming and youth culture," stated Christoph Pachler, Interim CEO of FaZe Clan.  "The strength of the FaZe brand and GameSquare's infrastructure are a powerful combination that will enable FaZe shareholders to benefit from the combined company's long-term value creation potential."

### Significant Strategic Combination and Financial Rationale

The combination with FaZe Clan continues GameSquare's strategy of acquiring leading companies focused on esports, gaming, and youth culture to increase capabilities, grow scale, unlock cost savings, empower fans and creators, and drive value for shareholders.

The combination of FaZe Clan and GameSquare:

Returns FaZe Clan's founders to lead the brand and reestablish authenticity

- Richard "FaZe Banks" Bengtson to be CEO of FaZe Clan, which will operate as a wholly owned subsidiary and independent division of GameSquare

- Thomas "FaZe Temperrr" Oliveira to be President of FaZe Clan
- Yousef "FaZe Apex" Abdelfattah to be COO of FaZe Clan
- Founders are focused on refreshing the FaZe Clan brand, re-engaging with its core fanbase and empowering individual FaZe Clan creators and their communities

Establishes leading platform connected to esports, gaming and youth culture

- Creates the top creator network in gaming and esports with over 250 million hours of content watched in 2022 across both companies' talent networks
- Talent network includes leading gaming, sports, and entertainment personalities such as Ninja, TimTheTatman, Max Holloway, Trevon Diggs, FaZe Banks, FaZe Temperrr, FaZe Apex, FaZe Nickmercs, FaZe Rug, FaZe Swagg and more.
- Combines hyper-engaged global fanbases with over 1 billion combined social followers, with a core focus on 13 - 34 -year-old audiences

Leverages GameSquare's progressive, end-to-end platform to connect global brands with hard-to-reach audiences

- Powerful infrastructure supported by award-winning media and agency assets, influential gaming and esports teams, leading creative services, and best-in-class, SaaS-based technology assets
- Unites powerful portfolio of brand partners including Porsche, Nike, Jack in the Box, Xfinity, Miller Lite, H-E-B, and GHOST
- Combination with FaZe Clan enhances GameSquare's growth potential by increasing brand opportunities across GameSquare's product offerings

Enhances scale and unlocks significant cost-saving opportunities

- Management expects to realize over $18 million in run-rate cost savings, supported by reduced corporate costs and focus on driving efficiencies across the organization

**Transaction Details**
The respective Boards of Directors of GameSquare and FaZe Clan have unanimously approved the transaction.  The transaction is currently anticipated to close in the fourth quarter of 2023, subject to approval by the FaZe Clan and GameSquare shareholders, the closing of the private placement described below, as well as the receipt of required regulatory approvals, and other customary closing conditions.

On October 19, 2023, GameSquare, GameSquare Merger Sub I, Inc., a wholly owned subsidiary of GameSquare ("Merger Sub") and FaZe Clan, entered into an Agreement and Plan of Merger (the "Merger Agreement"). Subject to the terms and conditions of the Merger Agreement, Merger Sub will merge with and into FaZe Clan, with FaZe Clan surviving the merger, such that following the merger, the surviving entity will continue as a wholly owned subsidiary of GameSquare (the "Merger"). In accordance with the applicable provisions of the Delaware General Corporation Law, the separate corporate existence of Merger Sub will then cease.

At the effective time of the Merger and subject to the terms and conditions of the Merger Agreement, each issued and outstanding share of FaZe Clan common stock, will be converted into the right to receive 0.13091 shares of GameSquare's common stock (the "Exchange Ratio"), subject to the treatment of fractional shares in accordance with the Merger Agreement (the "Merger Consideration"). The shares issued as Merger Consideration will be registered on a registration statement on Form F-4. At the effective time of the Merger and subject to the terms and conditions of the Merger Agreement, each issued and outstanding share of restricted common stock granted under any FaZe Clan stock plan, whether vested or unvested, will be converted into GameSquare restricted common stock, and each outstanding option and warrant issued by FaZe Clan, whether or not vested or exercisable, will be converted into, respectively, a GameSquare option or warrant, in each case as adjusted by the Exchange Ratio. As of July 31, 2023, FaZe Clan has 76,329,689 issued and outstanding shares of common stock, and 11,536,121 shares reserved for issuance pursuant to FaZe Clan's outstanding stock options.

The Merger Agreement contains customary representations, warranties and covenants. In addition, this transaction has been entered into in the ordinary course of business and will not constitute a non-arm's length transaction or a related party transaction pursuant to the policies of the TSX Venture Exchange and applicable securities laws.

The Merger Agreement may be terminated under certain circumstances, including but not limited to, by either GameSquare or FaZe Clan if the Merger has not been consummated on or before December 31, 2023 , if a final and non-appealable order is entered permanently restraining or otherwise prohibiting the transactions contemplated by the Merger Agreement, if FaZe Clan's or GameSquare's stockholder approval has not been obtained at the respective stockholder meetings to be called to consider the Merger, and related transactions, or upon a material uncured breach of the respective obligations, covenants or agreements by the other party that would cause the closing conditions in the Merger Agreement not to be satisfied.

Neither FaZe nor GameSquare has incurred any broker/finder fees in connection with the Merger Agreement.

The Merger Agreement provides that the parties will take such action as necessary to cause nine directors to be appointed to GameSquare's Board of Directors effective as of the effective time of the Merger, with six to be designated by GameSquare, two to be designated by FaZe Clan and one to be mutually agreed by GameSquare and FaZe Clan.

Upon completion of the transaction, current GameSquare shareholders will own approximately 55% of the combined company, while current FaZe Clan shareholders will own approximately 45%.

In support of the Merger Agreement, GameSquare has secured a $10 million commitment from Goff & Jones Lending Co, LLC, to purchase shares of GameSquare's common stock to the extent necessary to complete the GameSquare private placement as described below, pursuant to the terms of that certain Backstop Agreement dated concurrently with the Merger Agreement (the "Backstop Obligation").

**Financing Condition to Closing**
In addition, in connection with the Merger, GameSquare is to complete (i) a private placement in public equity with certain accredited institutional investors to raise $10,000,000 through the sale of GameSquare common stock, subject to reduction based on applicable stock exchange rules, which financing is supported by the Backstop Obligation; and (ii) GameSquare shall have entered into an asset-based loan facility agreement with SLR Digital Finance LLC, as lender, having a three (3) year term and providing for maximum aggregate borrowings thereunder at any one time of not less than $10,000,000.

**The Materially Incomplete and Misleading Proxy Statement**

19.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on January 26, 2024.  The Proxy Statement, which recommends that FaZe stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for FaZe and GameSquare; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Current Capital Securities, LLC ("Current"); (c) potential conflicts of interest faced by Current;

and (d) the background of the Proposed Transaction.

***Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts***

20.     The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including the line items underlying FaZe's projected Adjusted EBITDA and Unlevered Free Cash Flow.

21.     Similarly, with respect to the "GameSquare Projections" prepared by GameSquare management and extrapolated by FaZe management, the Proxy Statement fails to disclose the line items underlying GameSquare's projected Adjusted EBITDA and Unlevered Free Cash Flow.

***Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Current***

22.     The Proxy Statement fails to disclose material information concerning the financial analyses prepared by Current.

23.     With respect to the *Illustrative Discounted Cash Flow Analysis* of FaZe and GameSquare performed by Current, the Proxy Statement fails to disclose: (a) any terminal values for FaZe or GameSquare; and (b) each entity's respective fully diluted outstanding shares as used in the analysis.

***Material Misrepresentations and/or Omissions Concerning Current's Potential Conflicts of Interest***

24.     The Proxy Statement fails to disclose potential conflicts of interest affecting Current, including the details of the fee Current was entitled to receive upon the delivery of its fairness opinion.[4]

---

[4] *See* Proxy Statement at 67.   This material omission prevents FaZe stockholders from

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

25.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction, including the details of the indications of interest FaZe received during the process leading up to the Proposed Transaction, including indications of interest received by parties referred to in the Proxy Statement as "Party A," "Party B," "Party C," and "Party D."

26.     The Proxy Statement further fails to disclose whether the Company entered into any non-disclosure or confidentiality agreements with parties during the strategic process that include a "don't ask, don't waive" standstill provision and, if so, whether any of the "don't ask, don't waive" standstill provisions remain in effect and are currently precluding any party from submitting a topping bid for the Company.

27.     The omission of the above-referenced information renders statements in the "FaZe Unaudited Financial Projections," "Opinion of Current Capital Securities LLC," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

28.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

---

adequately assessing Current's potential conflict as it directly impacts the motivations of Current in its role as the Company's financial advisor.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and FaZe**

29.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

30.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  FaZe is liable as the issuer of these statements.

31.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

32.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

33.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

34.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

35.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

36.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

37.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38.     The Individual Defendants acted as controlling persons of FaZe within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of FaZe and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

39.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

40.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and

exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

41.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

42.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  February 1, 2024                    **LONG LAW, LLC**

                                            By:  */s/ Brian D. Long*
                                            Brian D. Long (#4347)
                                            3828 Kennett Pike, Suite 208
                                            Wilmington, DE 19807
                                            Telephone: (302) 729-9100
                                            Email: BDLong@LongLawDE.com

                                            *Attorneys for Plaintiff*